IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) |
| v. | ) CASE No.: 4:20CR00018 |
| | ) |
| ALAN JAX WAGONER | ) |

**DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE SECOND SUPERCEDING INDICTMENT AS THESE COUNTS ARE BASED ON UNCONSTITUTIONALLY VAGUE STATUTES**

## Relevant Background

Counts One and Two of the second superseding indictment charge two firearms offenses. Count One alleges that on or about January 26, 2020, Mr. Wagoner, a felon, possessed ten firearms, in violation of 18 USC Section 922(g)(1). Count Two alleges that one of those firearms (Remington Model 11, 16 gauge shotgun) had a barrel less than 18 inches in length and was not registered to Mr. Wagoner in the National Firearms Registration and Transfer Record.

Law enforcement officers seized these "firearms" in a search of Mr. Wagoner's truck on January 26, 2020. Each of the "firearms" was in obviously damaged condition. Some, quite clearly, could not be fired or

even tested for firing.[1]  The Remington Model 11, 16-gauge shotgun, for example, had no stock, and was "missing many internal parts to include the bolt assembly, action spring assembly and tube, and the trigger spring."  Report of Bureau of Alcohol Tobacco Firearms and explosives (ATF) Enforcement Officer Barlow, ECF 60-1. A photo is pasted below.



---

[1] It is our understanding that none of the "firearms" was actually tested to see if the "firearm" would fire a projectile (either a bullet or shotgun projectile).  Those found capable of limited testing (unspecified in Agent Davis's report) were tested by placing a shell with no projectile in the item and seeing if a pull of the trigger would strike the shell—without a projectile in the chamber. It's not clear whether the shells had an intact primer.  A diagram is provided below detailing the different parts of a cartridge.

Nonetheless, and despite not actually determining if the firearm would function as designed, Agent Barlow determined that the "shotgun" is a "firearm" within the meaning of federal law. Though not specifically citing to the statute, Agent Barlow evidently based his conclusion on the following language (in bold print) in 26 USC Section 5845(d) which defines a "shotgun" as a:

> Weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and **shall include any such weapon which may be readily restored to fire a fixed shotgun shell.**

ATF Agent Davis examined all ten "firearms" (including the 16-gauge shotgun). He determined that each is a "firearm" "as defined in Title 18 United States Code, Chapter 44, Section 921(a)(3) and each was not manufactured in the Commonwealth of Virginia. ECF 61-2. 18 USC Section 921(a)(3) defines a firearm as:

> (A) Any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosion; the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

Agent Davis, like Agent Barlow, did not specifically address the issue of the dysfunctionality of the weapons that he examined. Evidently he concluded that these weapons were "firearms" (notwithstanding that none actually was tested and found to successfully discharge a projectile) because they could be "readily converted" to fire.

**The Vagueness Doctrine**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "A statute can be impermissibly vague . . . if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Applying these standards, the Supreme Court has struck down laws ranging from a city ordinance outlawing "loitering" (*Chicago v. Morales*, 527 U.S. 41 (1999) to, most recently, a clause in the Armed Career Criminal Act describing a "violent felony" as a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Johnson v. United States*, 135 S. Ct. 2551 (2015). A statute, in short, must set forth an

"ascertainable standard" for compliance. *United States v. L. Cohen Grocery Co.* 255 U.S. 81, 89 (1921).

**The definition of a "shotgun" in 26 USC Section 5845(d) and a "firearm" in 18 USC Section 921(a)(3) are unconstitutionally vague as the undefined terms "readily restorable" and "may be readily converted" provide no "ascertainable standard" for determining whether an item qualifies as such.**

"When a statute does not define a term, we typically give the phrase its ordinary meaning." *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011). Focusing first on the term "readily restorable", the dictionary defines "readily" as "promptly; quickly; easily."[2] "Restore" is relevantly defined as: "to bring back to a former, original, or normal condition, as a building, statue, or painting; to bring back to a state of health, soundness or vigor. *Id* at "restore." And "restorable" means "fit for restoring or reclaiming."[3]

So, a weapon is "readily restorable" in common parlance if it can be promptly or quickly or easily put back in its original condition. And *promptly*, *quickly*, and *easily* are inherently vague modifiers as a sampling of the cases bears out. In *United States v. Smith*, 477 F. 2d 399 (8th Cir. 1973), for example, the court held that a firearm was "readily restorable" to shoot automatically when the restoration would requires

---

[2] See https://www.dictionary.com/browse/readily
[3] See https://www.merriam-webster.com/dictionary/restorable

eight hours of work by an expert gunsmith in a machine shop. In *United States v. One TRW, Model M14, 7.62 caliber Rifle*, 441 F. 3d 416 (6th Cir. 2006), the court held that a firearm was "readily restorable" to machine gun configuration where an expert gunsmith could do so within six hours. The dissenting judge in that case disagreed, noting most prominently the dictionary definitions of the words "readily" and "restorable." Id. at 429. Closer to home, the court in *United States v. M–K Specialties Model M-14,* 424 F. Supp. 3d 862 (N.D. W. Va. 2006) found that a firearm was "readily restorable" to qualify as a machine gun where testimony established that an expert could do so in fifty minutes.

On the other hand, in *United States v. Seven Misc. Firearms*, 503 F. Supp. 565 (D.D.C. 1980), the court held that a weapon was not "readily restorable" because such would require hours of work in a shop and the services of an expert gunsmith. *Cf., United States v. Woodlan*, 527 F. 2d 608 (6th Cir. 1976) (finding weapon "readily restorable" where it could be modified to fire automatically in two minutes); *United States v. Woods*, 560 F. 2d 660 (5th Cir. 1977) (finding weapon "readily restorable" because all that was required was connecting two pieces with minimal effort).

It's important to note that these cases were not dealing with damaged weapons and efforts to restore them to functionality but with changes to intact weapons to allow them to fire automatically. Here, the weapon examined by Agent Barlow is a "shotgun" that is missing parts, that clearly has been damaged, that has not been tested to see if it will fire anything in its present condition, and that has not been "restored" to see if whatever restoration efforts are envisioned will succeed. And yet Agent Barlow has opined that it is "readily restorable"—with no estimate of time, effort, skill, or tools needed to accomplish such. Are the missing parts in stock? Can the repair be done in eight hours by an expert gunsmith? Can it be accomplished in 50 minutes by an expert gunsmith? Does one even look at it from the perspective of an expert gunsmith or instead look at it from the perspective of the particular defendant or an ordinary person? What tools do we give the gunsmith or the defendant or the ordinary person? Most importantly, what should a jury be told to guide them in assessing whether something is "readily restorable"?

All of these questions lay bare the fundamental flaw in this statutory definition as applied to a dysfunctional "shotgun". "Readily restorable" is not an "ascertainable standard" for assessing a violation of this statute.

It is inherently vague; it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

The same can be said of the term "may be readily converted" in 18 USC Section 921(a)(3) as applied to the dysfunctional "firearms" examined by Agent Davis. Again, "readily" means promptly or quickly or easily. And "converted" means "to alter the physical or chemical nature or properties of especially in manufacturing" or "to change from one form or function to another."[4] Thus a functioning starter pistol that could be converted to fire live ammunition "within three to twelve minutes" qualifies as a firearm. See *United States v. 16,179 Molso Italian .22 caliber Winter Derringer*, 443 F. 2d 463, 464 (2nd Cir. 1971) (upholding statute on vagueness challenge).

But this case involves damaged firearms not one of which was tested to see if it would function properly and without any information regarding what would be required to repair them or "convert" them to

---

[4] https://www.merriam-webster.com/dictionary/converted

functionality. A person of ordinary intelligence would not be on notice that these items qualify as "firearms."

**Conclusion**

For the reasons stated this Court should dismiss Counts 1 and 2 of the second superseding indictment as violative of the Due Process Clause of the Fifth Amendment.

Respectfully Submitted,

ALAN JAX WAGONER

By Counsel

s/Randy V. Cargill
Assistant Federal Public Defender
210 First Street, Suite 400
Va Bar No. 23811
randy_cargill@fd.org
540-777-0880

s/ Benjamin Schiffelbein
Assistant Federal Public Defender
NH Bar No. 267593

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was electronically filed and will be forwarded to the Assistant United States Attorney, this 18th day of October 2021.

s/Randy V. Cargill