IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 4:20-cr-18 |
| : | |
| ALAN JAX WAGONER : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR PROSECUTORIAL MISCONDUCT

COMES NOW the United States of America, by counsel, and moves that the court deny the defendant's motion to dismiss the indictment for prosecutorial misconduct (ECF No. 130).

In essence, the defendant moves to dismiss an indictment for prosecutorial misconduct where there was neither misconduct nor prejudice. The motion is without support and should be denied.

## INTRODUCTION

Defendant Alan Jax Wagoner, through his counsel, claims he was misled by government counsel related to a disclosure of potential impeachment information that was made quickly in advance of a scheduled – but then continued – hearing, the subject matter of which has since been deemed inadmissible by this court. Defense counsel seeks the extraordinary remedy of dismissal of the indictment, even though he can show no prejudice to his client. Defense counsel's claim rests entirely on the notion that the government disclosed that a corroborative witness, called to testify for a limited purpose at a suppression hearing, had been "reassigned" rather than "demoted"; a characterization, which, even if the

1

court were to find imprecise, was quickly cured by the timely disclosure of the underlying source documents to defense counsel. At the time defense counsel filed the present motion to dismiss, the court had already granted the government's motion *in limine* precluding cross-examination on work-related performance deficiencies, including any issues related to reassignment of duties *or* demotion. *See* ECF No. 107.  More still, the current claim of misconduct relates to a suppression motion in which defense counsel engineered a factual dispute through the omission of critical facts in his own filing, the insertion of which would have made his original filing either frivolous or likely capable of being decided on the pleadings.  In sum, defendant claims he has been misled over a matter that has already been deemed inadmissible by the court, and is related to a suppression motion premised upon defense counsel's own factual omissions.  For these reasons, the government respectfully requests the court deny Wagoner's motion to dismiss the indictment.

## FACTUAL AND PROCEDURAL HISTORY

The defendant is charged in a Second Superseding Indictment with being a prohibited person in possession of multiple firearms and ammunition in violation of 18 U.S.C. § 922(g), and with possessing an unregistered weapon made from a shotgun in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. These charges stem from a traffic stop on January 26, 2020, initiated by the Henry County Sheriff's Office.

The matters at issue in the motion before the court began when defense counsel filed a motion to suppress the firearms found in the cab of the defendant's pickup truck on June 21, 2021 (ECF No. 64). Counsel for the defendant failed to mention to the court the multiple other firearms and hundreds of rounds of ammunition found in the open bed of

Wagoner's pick-up truck, failed to mention the fact that Wagoner left the driver's door wide open (clear in the videos provided in discovery) and that the firearms in the cab were readily observable under the raised bucket seat. Finally, counsel has not (and cannot) cite any law that the officers would not be entitled to rely on good faith based upon the subsequent search warrant issued by a magistrate.

Prior to the anticipated hearing on the motion to suppress, counsel for the government followed its routine practice of conducting an interview with each prospective witness with a view towards fulfilling its duties and responsibilities related to possible impeachment information pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and related requirements.

On June 30, 2021, the day before the scheduled suppression hearing, a prospective witness disclosed memory issues that were subsequently disclosed to opposing counsel.[1] Wagoner moved to continue the scheduled suppression hearing due to this disclosure as well as several other unrelated issues,[2] and the court granted that motion. ECF No. 70.

Because the prospective witness disclosed that he sought medical treatment, in part because of work-related performance mistakes and deficiencies, government counsel requested and received permission to review that witness's personnel file. That review was first accomplished on July 6, 2021, less than a week after the initial *Giglio* interview with an intervening July 4th holiday in between. The relevant documents setting forth the work-related deficiencies and a basis for reassignment and demotion were provided to defense

---

[1] The details underlying this issue are more fulsomely described in the government's Response to Motion to Compel Testimony, ECF No. 122.
[2] *See* ECF No. 69 (sealed briefing).

counsel by email on July 8, 2021. On August 12, 2021, the government filed a motion *in limine* and an accompanying brief, ECF Nos. 97, 100, arguing that the information it had disclosed was not admissible impeachment material. That motion went unopposed by written response from defense counsel, and on August 23, 2021, after the hearing on the motion to suppress, the court by oral order granted the government's motion. *See* ECF No. 107.

## ARGUMENT

### 1. There is no basis in law or fact supporting defendant's motion to dismiss the indictment for prosecutorial misconduct.

Counsel for Wagoner claims that government counsel should have stopped the defendant from pursuing his motion to suppress even though that motion was filed on June 21, 2021, ten days before the government's disclosure for which defense counsel now raises objection. At the heart of the argument expressed in his motion to dismiss, counsel writes:

> The government misled the defense counsel. In so doing, the government stood by while the defense relied on the government's deception in arguing to continue proceedings, questioning a witness, and arguing to suppress evidence.

ECF No. 130, at 6. In other words, counsel for the defendant contends that it is the government's fault that defense counsel pursued his motion to suppress.

The attempt to blame the government for pursuing its motion to suppress is not surprising, given that defense counsel omitted crucial facts from his motion. While the court has yet to rule on that suppression motion, the court has reviewed the evidence and is certainly aware of this. In the government's view, it appears defense counsel omitted key facts—that in addition to the two firearms in the cab, there were eight burnt firearms and

4

hundreds of rounds of ammunition in the exposed, open-air bed of Wagoner's pickup truck, along with other items—as well as ignoring the clearly applicable plain view legal doctrine. As the court suggested during the suppression hearing, counsel for Wagoner has arguably conceded that the eight firearms and hundreds of rounds of ammunition found in the exposed bed of the pickup truck are in fact admissible, since by omitting this key information and only discussing the two firearms located under the driver's seat, counsel has failed to assert, much less justify, that these additional items of evidence should be suppressed.

To be clear, government counsel has not misled Wagoner or his counsel. Counsel for the United States has endeavored to perform their duties diligently and professionally, and have accommodated requests for additional reviews and additional information at defense counsel's behest. Indeed, the government may not have been sufficiently clear in its initial disclosure, but promptly disclosed to defense counsel relevant information relating to a prospective witness's memory issues arising from an actual medical diagnosis, and then quickly assessed and subsequently disclosed this witness's work-related performance deficiencies, reflecting a willingness to provide more information than may be actually required.

Defense counsel's singular focus is on the word "reassignment" as well as the nature and impact of the government's disclosures. As set forth in the government's motion *in limine*, ECF No. 97, this prospective witness's work-related performance deficiencies do not constitute proper impeachment material under the applicable case law. The court agrees. *See* ECF No. 107. Yet defense counsel claims some form of deception related to the word

5

"reassignment" arising from an interview between government counsel and a prospective witness and subsequent disclosures. This clearly misses the point. In any event, the underlying information and documentation concerning this witness was gathered, assessed, and disclosed to the defense promptly.

Defense counsel could not have been misled about a demotion, or as to how the government developed this information, because it received all of the information reasonably available to the government on July 8, 2021. This same information was provided to the court (and again to opposing counsel) and discussed at length in the government's motion *in limine*, ECF No. 97, and accompanying brief, ECF No. 100, which were filed on August 12, 2021. Defense counsel filed no response. The hearing on the defendant's motion to suppress was held on August 23, 2021. The court granted the government's motion *in limine* on August 23, 2021, as published by Order entered August 26, 2021. ECF No. 107. And yet, on October 8, 2021, defense counsel maintains not only that he was deceived, but that the deception was so egregious that the indictment should be dismissed due to prosecutorial misconduct.

Defense counsel cites no case law in support of its view that the circumstances justify dismissal or even that prosecutorial misconduct occurred. Instead, counsel for Wagoner largely relies on well-known cases notable for general principles of law. The one specific case it cites, *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993), is a Ninth Circuit case from 1993 that involves a prosecutor's misstatement to a jury during closing argument, which is completely inapposite to anything relevant to the case at hand, and at best is merely persuasive authority.

A review of Fourth Circuit case law involving allegations of prosecutorial misconduct reveals that there is no legal basis supporting the defendant's motion to dismiss. The majority of cases address comments made by a prosecutor during jury trials, particularly during closing argument; these cases are not applicable since there has been no trial. Pretrial cases largely concern allegations of prosecutorial vindictiveness, which is not alleged here. Regardless, the legal test for assessing allegations of prosecutorial misconduct is well established. First, the "prosecutor's remarks or conduct must in fact have been improper," and second, those "remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990) (*citing United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988) (quoting *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985))). The *Chorman* opinion is oft cited for establishing the pertinent legal standard.

Other cases demonstrate the lack of support for defendant's allegation and the audacity of its requested remedy for outright dismissal of the indictment. The defendant's motion in this case is akin to that of the *pro se* inmate defendant's allegations in *United States v. Talib*, No. 2:07cr00003, 2007 WL 2255234 (W.D. Va. Aug. 6, 2007) (Jones, J.). In *Talib*, the defendant requested dismissal of the indictment on a claim of prosecutorial misconduct, claiming that the government had not been timely in providing discovery, causing the defendant to waive his right to a speedy trial by requesting a continuance. *Id.* at 2. The court in *Talib* cited the Supreme Court for the proposition that "a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant." *Id.* (*citing Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)). The *Talib*

court went further and pointed out that "dismissal of an indictment due to a prosecutor's improper refusal to comply with a discovery order was 'an extreme and inappropriate sanction.'" *Id.* (*citing United States v. Hastings*, 126 F.3d 310, 317 (4th Cir. 1997)).

Instead, defense counsel makes the bald assertion that "should the court deny his motion to suppress, [the defendant] will have been prejudiced by the deception[.]" There is no further explanation of what this alleged prejudice might be. In fact, defense counsel never attempts to explain *any* prejudice in this case, at any point, which would justify any remedy, much less dismissal of the indictment. Defendant cites the well-known case of *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), for the proposition that prejudice may be presumed in the most egregious cases such that the proceedings have become fundamentally unfair. *See* ECF No. 130, at 5. But again, defense counsel makes no attempt whatsoever to explain *any* prejudice to Wagoner. The defendant's filing is plainly unsupported by fact, unsupported by law, and, as set forth below, not filed in good faith.

The United States also wishes to bring to the court's attention a potential conflict issue arising from and related to this overall issue. As made clear in the email communications between counsel, attached at Exhibit A, defense counsel repeatedly raised the specter of an allegation of prosecutorial misconduct against government counsel while simultaneously seeking "a fair resolution in light of all the issues." *See* Exhibit A, email sent on Oct. 7, 2021, at 4:36 p.m. The implications are clear. Government counsel could avoid an allegation of prosecutorial misconduct by offering a plea agreement on terms favorable to the defendant. Government counsel confronted defense counsel about the implications of his statement, and defense counsel first stated, "[t]hat was not at all what I intended to

8

convey in my [phone] conversation" but went on to state, "[w]hether this amounts to prosecutorial misconduct warranting relief will be up to the court," and later, "I intended only to convey that this is an issue in the case and the government can evaluate it as it would any other issues in deciding what an appropriate plea agreement might be--like the merits of the suppression issue." *Id.*

A more direct second communication was sent on October 8, 2021, at 2:58 p.m. *See* Exhibit A. In that communication, counsel attached a draft version of his motion alleging prosecutorial misconduct and stated, "[f]eel free to consider this however you may in deciding if you would like to continue plea negotiations in this case." In his last communication, defense counsel denied that he was linking plea negotiations to the (non-)filing of ethical complaints, instead justifying his conduct by stating, "[a]nd plea negotiations frequently revolve around motions practice, even motions that relate to the government's ethical obligations (such as *Brady* and *Giglio* motions)." *See* Exhibit A, email sent on Oct. 8, 2021, at 4:46 p.m.

Counsel for the United States believed they could not ethically engage in further plea negotiations once the threat of prosecutorial misconduct was raised and tied to those negotiations. To proceed otherwise would be to operate under an inherent conflict of interest under Virginia Rule of Professional Conduct 1.7(a)(2), in that government counsel now has a personal self-interest in how the proceedings occur to the possible detriment of their client, the United States. However, defense counsel implied that the allegation of prosecutorial misconduct could be avoided entirely through successful plea negotiations. In so doing, counsel for the defendant arguably attempted to induce government counsel to

9

violate Rule 1.7(a)(2), which itself could potentially constitute a violation of Virginia Rule 8.4 prohibiting attorneys from inducing another to violate the Rules of Professional Conduct. And yet, defense counsel apparently believes this conduct is proper, appropriate, and within the ethical boundaries of the practice of law.

## CONCLUSION

For all of these reasons, the United States respectfully requests the court deny the defendant's motion to dismiss the indictment for prosecutorial misconduct.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

s/Matthew M. Miller
Assistant United States Attorney
VA Bar No. 43034
310 1st Street SW, Suite 906
Roanoke, VA 24011
(540) 857-2250
Matthew.miller2@usdoj.gov

s/Kristin B. Johnson
Assistant United States Attorney
VA Bar No. 71115
310 1st Street SW, Suite 906
Roanoke, VA 24011
(540) 857-2250
Kristin.Johnson2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2021, I caused to be filed electronically this Response to the Defendant's Motion to Dismiss Indictment for Prosecutorial Misconduct, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Kristin B. Johnson
Assistant United States Attorney

Case 4:20-cr-00018-EKD Document 137 Filed 10/19/21 Page 11 of 11 Pageid#: 659